United States District Court
Southern District of Texas
**ENTERED**
November 03, 2023
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PHILLIP PICONE, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23-CV-1206 |
| | § | |
| OFFICER A. ANCIRA and CITY OF | § | |
| HOUSTON, TEXAS, | § | |
| *Defendants*. | § | |

**ORDER**

Before the Court is the Motion to Dismiss Plaintiff's First Amended Complaint filed by the Defendants, the City of Houston and Officer A. Ancira. (Doc. No. 14). The Plaintiff, Phillip Picone, has filed a response in opposition and the Defendants have replied. (Doc. Nos. 23, 24). The Motion to Dismiss the Original Complaint filed by Defendant Officer A. Ancira is denied as moot. (Doc. No. 9).

**I.    Background**

The City of Houston has an ordinance that makes it unlawful for individuals or groups to conduct or sponsor a food service event without the advance written consent of the owner of the property. HOUSTON, TEX., CODE OF ORDINANCES ch. 20, art. V, §§ 20-251 and 20-252 (2012). While one would assume, if just out of common courtesy, an individual or group would always get permission from a property owner prior to providing charitable food services on their property, Houston's ordinance mandates it. According to an internet publication attached as an exhibit to the Original Complaint, the intent of the ordinance was to "improve the quality, quantity, and distribution of food for the homeless" and to protect the environment. (Doc. No. 1-2). That same publication, which was published over a decade ago under a different administration (that of Mayor Annise Parker, 2010–2016), states that the Central Houston Public

Library Plaza at 500 McKinney had been approved as a "charitable food service location" for the Food Not Bombs Houston (FNBH) group to use.[1] (*Id.*). This is the group with which Plaintiff is affiliated. Since that time, Plaintiff judicially admits, Mayor Sylvester Turner's administration (2016–present) has limited participation in a food service event on city property to 61 Riesner Street. (Doc. No. 8 at 9).

Perhaps unaware that food distribution had been limited to 61 Riesner Street, in March 2023 Plaintiff met at the 500 McKinney site with other FNBH members to share food with the less fortunate.[2] Officer Ancira issued Plaintiff a ticket for his violation of the above-referenced ordinance on the basis of his participation in this event. Plaintiff claims that other members of FNBH have been similarly ticketed despite their alleged "compliance with the law." Plaintiff also claims he has suffered "great mental anguish including anxiety and depression" because of this ticket. (Doc. No. 8 at 12). He claims civil rights violations of the First and Fourth Amendments and makes claims against Officer Ancira and the City pursuant to 42 U.S.C. §§ 1983 and 1988. (*Id.* at 12–14). He also makes *Monell* claims against the City of Houston based upon these alleged constitutional violations. (*Id.* at 14–15). Finally, he asks that this Court find the ordinance unconstitutional "facially" or "as applied" and seeks injunctive relief against its enforcement. (*Id.* at 15–16).

Defendants have responded to these allegations with a motion to dismiss. (Doc. No. 14). With regard to Officer Ancira's liability, they first claim he has qualified immunity. Second, they claim that a "ticket" cannot be the basis of a Fourth Amendment claim. Next, they claim that

---

[1] The exhibit was referenced in the First Amended Complaint but only attached to the Original Complaint. The Defendants do not object to the Plaintiff's reference to it and in a motion to dismiss context the Court may consider these kinds of documents. *Chawla v. Shell Oil Co.*, 75 F.Supp.2d 626, 633 (S.D. Tex. 1999).

[2] The Plaintiff's briefing is silent as to whether the Plaintiff actually knew he was in a place that FNBH did not have permission to hold an event. The Defendants' briefing suggests he knew. There is certainly signage at the Central Houston Public Library Plaza indicating it is not an approved location. *See* (Doc. No. 14, Ex. F).

probable cause existed for the ticket. With regard to any liability as to the City, Defendants claim

that its policies did not harm the Plaintiff, that the constitutional allegations are time-barred, any

civil rights claims are barred by the doctrine set out in *Heck v. Humphrey*, 512 U.S. 477 (1994),

and that it has governmental immunity.

## II.      The Legal Standard for a Motion to Dismiss

### *Rule 12(b)(6)*

Under Rule 12(b)(6), a court must accept as true all well-pleaded allegations in the

complaint and view them in the light most favorable to the plaintiff. *Rankin v. Wichita Falls*, 762

F.2d 444, 446 (5th Cir. 1985). To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a

"probability requirement," but it asks for more than a sheer possibility that a defendant has acted

unlawfully. *Id.* When a complaint pleads facts that are "merely consistent with" a defendant's

liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. at 557). As the United States Supreme Court has emphasized,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice" to prevent a motion to dismiss. *Id.*; *Fernandez-Montes v. Allied Pilots

Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct . . . [the complaint] has not 'show[n]'—

'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 679 (quoting Fed. R. Civ. P. 8(a)(2)).

*Rule 12(b)(1)*

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. FED. R. CIV. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. *Id.* The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination on the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. *Id.*

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would

entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

### III.    Qualified Immunity

The Court first addresses Plaintiff's allegations against Officer Ancira. Defendants urge the Court to grant their motion because Plaintiff's claims are insufficient to overcome Officer Ancira's qualified immunity.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The purpose of qualified immunity is to protect officials from harassment, distraction, and liability when the perform their duties reasonably, but to hold public officials accountable when they exercise their powers irresponsibly. *Id.* When an official should have known that his conduct would violate the plaintiff's constitutional rights, he or she is not entitled to qualified immunity. *White v. Pauly*, 137 S.Ct. 548, 552 (2017).

When evaluating a defendant's qualified immunity defense at the motion to dismiss stage, a district court must find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *See Est. of Bonilla v. Orange Cnty.*, 982 F.3d 298, 306 (5th Cir. 2020) (quoting *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016)) ("Once a defendant asserts the qualified immunity defense, '[t]he plaintiff bears the burden of negating qualified immunity.'"). A plaintiff seeking to overcome qualified immunity at the pleading stage must allege: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 732 (2011). The Supreme Court does not require district courts to address both prongs for

every case. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Rather, courts may find qualified immunity based solely on plaintiff's failure to clear the clearly established hurdle. *See also Joseph v. Bartlett*, 981 F.3d 319, 331 (5th Cir. 2020) ("[W]e have discretion to leapfrog the merits and go straight to whether the alleged violation offended clearly established law..."). This is because addressing the first prong of whether a constitutional violation took place, "sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." *Pearson*, 555 U.S. at 236–37.

In accordance with that decision, this Court examines Plaintiff's pleadings as they pertain to both requirements. When addressing the clearly established requirement in *Joseph*, the Fifth Circuit noted that overcoming qualified immunity generally "requires the plaintiff to identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances was held to have violated the Constitution." *Joseph v. Bartlett*, 981 F.3d at 330 (cleaned up). The unlawfulness of the challenged conduct must be "beyond debate." *Id.* (citing *Ashcroft*, 563 U.S. at 741). In fact, the Circuit stated, "we cannot deny qualified immunity without identifying a case in which an officer acting under similar circumstances was held to have violated the Fourth Amendment, and without explaining why the case clearly proscribed the conduct of that individual officer." *Id.* at 345.

Plaintiff responds that the concept of qualified immunity "has outlived any limited usefulness it may have had, and should no longer exist." (Doc. No. 23 at 10). Plaintiff cites various cases in which judges have voiced similar sentiments, but no actual case authority from the Supreme Court of the United States, the Fifth Circuit, or the Supreme Court of Texas that actually establishes this premise as prevailing law. Plaintiff acknowledges as much:

> Plaintiff is, of course, aware that this Court is bound by the strictures of the 5th
> Circuit and the U.S. Supreme Court, and as a result, it must dutifully apply the
> qualified immunity standard if it has been adequately raised. But the correction of
> this legal fiction is long overdue.

(*Id.* at 11).

Here, Plaintiff has failed to meet his burden to defeat immunity and, consequently,

Officer Ancira is entitled to qualified immunity defense based on the clearly established prong.

Plaintiff's response is devoid of any factual support for defeating immunity and it lacks any

supporting legal precedence.

At the time in question, Officer Ancira was enforcing a valid city ordinance that Plaintiff

was violating.[3] His is thus entitled to qualified immunity and is immune from all claims in this

lawsuit. Officer Ancira is hereby dismissed.

## IV.   Governmental Immunity

The City also claims it is immune from suit because its actions in this matter were an

exercise of one of its governmental functions. The governmental immunity cited by the City is in

the Tort Claims Act, and applies to state law claims. The sub-chapter is titled "Tort Liability of

Governmental Units."

> Houston is immune from claims based on its performance of governmental
> functions. *City of Friendswood v. Horn*, 489 S.W.3d 515, 523 (Tex. App.—
> Houston [1st Dist.], no pet.). Governmental functions are "those functions that are
> enjoined on a municipality by law and are given it by the state as part of the
> state's sovereignty…" TEX. CIV. PRAC. & REM. CODE § 101.0215. Governmental
> functions include "police and fire protection and control" as well as "health and
> sanitation services." *Id.* § 101.0215(1), (2).
>
> Plaintiff interferes with Houston's governmental obligations to ensure food safety
> without articulating valid reasons for seeking to halt government action. Unless
> the Legislature has waived government immunity under these circumstances by

---

[3] The Court understands that Plaintiff is now challenging the propriety/legality of the ordinance and will address that
issue later. At the time of the incident, Plaintiff has judicially admitted conduct that contravened the ordinance that
was at the time a valid ordinance. Officer Ancira's actions were therefore clearly not in contravention of either a
statutory or constitutional right that was well-established.

> clear and unambiguous language, Houston's immunity is not waived. TEX. GOV'T
> CODE § 311.034. Plaintiff has not pleaded any waiver of governmental immunity,
> nor has he alleged facts supporting a waiver of governmental immunity. Houston
> is immune from suit and liability and should be dismissed from this case pursuant
> to Federal Rule of Civil Procedure 12(b)(1).

(Doc. No. 14 at 14).

Houston contends that maintaining sanitation, health, and order—the basis for the ordinance in question—are clearly governmental functions and that, absent waiver, it cannot be sued for its performance of its governmental functions to the extent that Plaintiff seeks state law tort damages. Clearly, the City of Houston has raised its governmental immunity and it is generally immune from money damages. *St. Maron Properties, L.L.C. v. City of Houston*, 78 F.4th 754 (5th Cir. 2023). The Court notes that the sole source cited by the City for its alleged immunity is the TTCA, which would only shield it from liability for state law claims. To be shielded from federal law claims, like Plaintiff's § 1983 claim, the source of immunity would have to be the Sovereign Immunity granted by the Eleventh Amendment. Generally, though, a state's Sovereign Immunity does not extend to local governments and municipalities. *See Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978). The exception to this general rule is when a local government entity acts as an arm of the state. *Id.* Here, the City has not argued that it was acting as an arm of the state. Therefore, its immunity argument fails with regard to Plaintiff's constitutional claims.

**V.     The City and The Legality of the Ordinance**

That being said, the Court notes that Plaintiff has sufficiently pleaded a § 1983 cause of action against the City for municipality liability as required by *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978).

The Plaintiff bases this cause on what he alleges are his rights protected by the First and Fourth Amendments. The Court grants the City's motion to dismiss as to the Fourth Amendment claim. Plaintiff has not sufficiently pleaded any facts that would indicate that he was ever seized by Officer Ancira or anyone else working for the city. A mere citation, such as Plaintiff pleads, does not equate to a restraint on liberty. *Burg v. Gosselin*, 591 F.3d 95, 96 (2d Cir. 2010).

Nevertheless, that does not dispose of Plaintiff's claim that the ordinance is unconstitutional and violates his First Amendment rights. To allege a *Monell* claim, a Plaintiff must allege: (1) an official government policy (the charitable feeding ordinance); (2) an official policy maker (the mayor); and (3) a direct causal link between the municipal policy and the alleged constitutional deprivation (free speech).

Plaintiff has pleaded claims for municipal liability under § 1983 and while § 1983 is not a source of substantive rights, it does provide a mechanism for vindicating rights established elsewhere. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Municipalities are susceptible to lawsuits under § 1983. *Monell*, 436 U.S. 658 (1978). As noted above, to state a *Monell* claim, one must plead that there is (1) an official policy (2) promulgated by the municipal policymaker that was (3) the moving force behind a constitutional violation. *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018). Here, the first two elements are pleaded and are virtually undisputed. The third element, while in dispute, has certainly been pleaded. The City's reliance on governmental immunity, the *Heck v. Humphrey* doctrine, and the Texas Government Code is not sufficient at this stage to dispose of Plaintiff's claims.

Therefore, the City's motion to dismiss as to Picone's *Monell* claim based upon the First Amendment is denied. The Court will consider the validity of the ordinance (and Picone's claim)

if and when the parties file a fully briefed motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## VI.    Conclusion

All claims against Officer Ancira are barred by qualified immunity and therefore he is dismissed. The Motion to Dismiss as to the claim against the City based upon the Fourth Amendment is also dismissed. The Motion to Dismiss as to Plaintiff's *Monell* claim based upon the First Amendment and his claim for injunctive relief is denied without prejudice. The Court will proceed on the following schedule. The City shall file a motion for summary judgment on Plaintiff's constitutional claims by December 4, 2023. The Plaintiff may respond to the motion for summary judgment (and, if he so desires, file a cross-motion for summary judgment) by January 8, 2024. The City may file a reply if it does so by February 1, 2024. In setting out this schedule, the Court anticipates no discovery being needed. If the parties find this schedule to be burdensome or if they feel discovery is warranted, they may file a joint motion setting out a request for an alternative schedule, but they must do so by November 17, 2023.

SIGNED this _1st_ day of November 2023.

Andrew S. Hanen
United States District Judge