IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **PHILLIP PICONE,** | § | **Civil Action No. 4:23-cv-1206** |
| *Plaintiff,* | § | **(Jury Trial)** |
| | § | |
| **v.** | § | |
| | § | |
| **OFFICER A. ANCIRA,** *in his* | § | |
| *individual capacity***, and THE CITY OF** | § | |
| **HOUSTON, TEXAS** | § | |
| *Defendants.* | § | |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS
CROSS-MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE ANDREW S. HANEN:**

NOW COMES PLAINTIFF Phillip Picone, replying to Defendant City of Houston's response to his cross-motion for summary judgment.[1] He respectfully shows the Court as follows:

## I.  Nature and Stage of the Proceedings

Defendant City of Houston filed a motion for summary judgment,[2] Plaintiff filed his response and cross-motion,[3] and the City replied and responded.[4] Pursuant to this Court's procedures, replies may be filed in 10 days,[5] and because the deadline fell on a weekend, it is pushed to the following business day.[6] Thus, this reply is timely filed on February 12th, 2024.

---

[1] Doc. 28.
[2] Doc. 26.
[3] Doc. 27.
[4] Doc. 28.
[5] Judge Hanen's Civil Procedures § 7.D.
[6] Fed. R. Civ. P. 6.

## II.    Reply

The City's response to Plaintiff's cross-motion for summary judgment largely echoes the same basic, repeated points that Plaintiff has already thoroughly addressed in several briefings (for example, its repeated insistence that Plaintiff lacked permission from the City to distribute food at the Library Plaza despite having explicit, written permission)[7], but there are still several arguments worth addressing.

First, the City does little to address the burden placed on Plaintiff's expression of his Catholic religion. Just two short years ago, the U.S. Supreme Court reiterated the importance of conduct in the confluence of the Free Speech and Free Exercise clauses of the First Amendment, which "work in tandem":

> Where the Free Exercise Clause protects religious exercises, whether communicative or not, the Free Speech Clause provides overlapping protection for expressive religious activities. That the First Amendment doubly protects religious speech is no accident. It is a natural outgrowth of the framers' distrust of government attempts to regulate religion and suppress dissent. In Anglo-American history, government suppression of speech has so commonly been directed *precisely* at religious speech that a free-speech clause without religion would be Hamlet without the prince.[8]

The Court went on to note that the First Amendment "protects not only the right to harbor religious beliefs inwardly and secretly[, i]t does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through the performance of (or abstention from) physical acts."[9] This double-protection is afforded strict scrutiny.[10]

---

[7] Doc. 27-2.
[8] *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421 (2022) (cleaned up) (emphasis in original).
[9] *Id.* (cleaned up).
[10] *Id.*

The only case it cites with respect to Plaintiff's Free Exercise claim is a non-binding, out-of-Circuit case that highlights a problem with the City's own case. In *Redlich v. City of St. Louis*, the Eighth Circuit affirmed the grant of summary judgment against a pastor's challenge to a St. Louis ordinance restricting the distribution of certain foods without a permit.[11] But St. Louis's ordinance, as well as the justification and defense of its ordinance, differs from Houston's in several key ways. First, St. Louis's ordinance was targeted at the unpermitted provision of *specific food items* that commonly carried food-borne illnesses,[12] whereas Houston's ordinance restricts food sharing to a specific *location*, but only references food safety with respect to participants in its *voluntary* program.[13] Second, St. Louis's ordinance "adopted the 2009 Edition of the National Food Code, which is based on scientific research and was intended to provide municipalities with guidelines and rules to limit risk factors known to cause foodborne illness,"[14] while Houston's ordinance has no scientific or evidence-based underpinnings, choosing instead to funnel everyone toward the Health Department's voluntary program. Finally and most tellingly, St. Louis defended its ordinance by attaching, among other things, "evidence that it has traced incidents of illness among its homeless population to illegally distributed food dating back to 2012,"[15] whereas Houston has done nothing but point to its own website.

It also ignores that its ordinance unconstitutional prior restraint on the practice of religion by forcing advanced planning and express written permission in order to share food

---

[11] *See Redlich v. City of St. Louis*, 51 F.4th 283 (8th Cir. 2022).
[12] *Id.* at 285.
[13] Doc. 26-1.
[14] *Redlich*, 51 F.4th at 289.
[15] *Id.* at 288.

with more than 5 people. As Phillip describes, sometimes food sharing occurs as religious duty and spirit compel people, and this ordinance prevents that from occurring lest such a spontaneous act of charity attract more than 5 people,[16] and he cannot control whether or not more than 5 people will choose to participate in such a spontaneous act.

Beyond those problems, the City attempts to sidestep the vagueness of its ordinance by saying that because the *provider* of food is regulated rather than the *recipient*, that certain terms need not be defined.[17] But as Plaintiff already argued, how is a law enforcement officer to know whether a person providing food to 5 or more people is doing so to "benefit" "those in need" if neither of those terms are defined?[18]

But perhaps most tellingly — and fatally — the City does not show beyond conclusory statements how its ordinance is narrowly tailored, nor does it show that it provides "ample alternative channels."[19] While the City agrees on the applicable standard, it can only show that in the 12 years that the Anti-Food-Sharing Law has been on the books, the *only* alternative (beyond the specific permission given to FNBH)[20] it has supplied is by participating in its "voluntary" program and sharing food exclusively at 61 Reisner.[21] In fact, it supplied a calendar of food sharing events that *only* took place at 61 Reisner.[22] One location and forcing participation in its program does not provide "ample alternatives."

---

[16] Doc. 27-1.
[17] Doc. 28 p. 12.
[18] Doc. 27 § VIII.A.
[19] *See generally* Doc. 28.
[20] Doc. 27-2.
[21] *See generally* Doc. 26 and its attachments.
[22] Doc. 26-3.

### III.   Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court **DENY**

Defendant City of Houston's motion for summary judgment, **GRANT** this cross-motion

for summary judgment, and enter judgment in his favor and against Defendant City of

Houston, granting him to all relief to which he is entitled under law and equity. Should the

Court require further evidence in order to make its decision or with respect to the

determination of relief, including damages, Plaintiff requests an evidentiary hearing in order

to provide any such evidence.

Respectfully submitted,

*/s/ Alexander C. Johnson*
Alexander C. Johnson
Kallinen Law PLLC
State Bar of Texas
    Bar No. 24123583
U.S. Southern District of Texas
    Federal ID No. 3679181
511 Broadway Street
Houston, Texas 77012
Telephone: 573.340.3316
Fax: 713.893.6737
Email: alex@acj.legal
**Attorney for Plaintiff**

*/s/ Randall L. Kallinen*
Randall L. Kallinen
Kallinen Law PLLC
State Bar of Texas
    Bar No. 00790995
U.S. Southern District of Texas
    Federal ID No. 19417
511 Broadway Street
Houston, Texas 77012
Telephone: 713.320.3785
Fax: 713.893.6737
Email: AttorneyKallinen@aol.com

**Attorney for Plaintiff**

## CERTIFICATE OF SERVICE

I certify that on February 12th, 2024, I have served a true and correct copy of the foregoing document that was delivered by the ECF in accordance with the Federal Rules of Civil Procedure to all ECF notice attorneys of record.

*/s/ Alexander C. Johnson*
Alexander C. Johnson